No. 90-109

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

STATE OF MONTANA,
      Plaintiff and Respondent,
-vs-
LEE and REBECCA GIBBS,
husband and wife,
      Defendants and Appellants.

APPEAL FROM:   District Court of the Tenth Judicial District,
               In and for the County of Fergus,
               The Honorable John C. Warner, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Torger S. Oaas, Lewistown, Montana

        For Respondent:

        Marc Racicot, Attorney General; Elizabeth S. Baker,
        Assistant Attorney General, Helena, Montana; Craig
        R. Buehler, Fergus County Attorney; Jon A.
        Oldenburg, Deputy County Attorney, Lewistown,
        Montana

                              Submitted:  June 28, 1990

                              Decided:  August 30, 1990

Filed:

_____
                Clerk

Justice John C. Sheehy delivered the Opinion of the Court.

Lee and Rebecca Gibbs each appeal from judgments of conviction against them for violations of the game laws of Montana. The convictions were obtained in the District Court, Tenth Judicial District, Fergus County. As to Lee Gibbs, we affirm the judgment of conviction as to two of the counts and remand one of the same for resentencing. We affirm the conviction of Rebecca Gibbs but remand for resentencing.

In the month of February, 1988, Warden Sergeant Gary E. Burke, of the Montana Department of Fish, Wildlife and Parks, posing as a buyer of animal horns, in an undercover investigation, viewed antlers at the Gibbs residence. On a subsequent date, when Burke returned to the Gibbs residence, Lee Gibbs inquired about purchasing a set of sheep horns the agent had in his truck. Eventually Gibbs agreed to trade his tanning services for two illegal bobcat hides that Burke brought over in exchange for a small set of sheep horns from Burke. Burke picked up the bobcat hides after they were tanned. Rebecca Gibbs told Burke that she had done most of the work on the hides.

On Burke's first visit to the Gibbs residence, Lee Gibbs had shown him a mountain lion hide which Gibbs said he had caught in a trap line he had set out. Gibbs had shot the mountain lion twice in the side with a pistol. On a later visit by Burke to the Gibbs home, the price of lion hide was discussed and eventually Burke paid Gibbs $300 for the lion hide.

The foregoing are the important facts in regard to this case. Lee Gibbs was charged in the District Court with violations of the game laws in five counts: Count I possession of parts of an unlawfully taken fur-bearing animal (§ 87-3-112, MCA), for the possession of two illegal bobcat pelts; Count II possession of parts of an unlawfully taken game animal (§ 87-3-112, MCA), illegal possession of the head and cape of a bighorn sheep; Count III sale of parts of unlawfully taken game animals (§ 87-3-111, MCA), selling the hide of an unlawfully taken mountain lion for $300; Count IV possession of parts of an unlawfully taken game animal (§ 87-3-112, MCA), having possession of parts of an unlawfully taken mountain lion; and, Count V, a felony, trafficking in body parts of unlawfully taken species (§ 87-3-111(4), MCA), relating to the purchase, sale, possession and transportation of unlawfully taken game animals.

Rebecca Gibbs was charged with the felony count of trafficking in body parts of game animals through accountability, under §§ 87-3-111(4) and 45-2-302, MCA, relating to aiding and encouraging Lee Gibbs in selling, purchasing, possessing and transporting unlawfully taken game animals or parts thereof.

The cases against the two defendants were consolidated for trial. The jury found Rebecca Gibbs guilty as to the charge against her. As to Lee Gibbs, the jury was unable to reach a verdict (a hung jury) on Counts I (possession of illegal bobcat pelts) and II (possession of the head and cape of an illegal bighorn sheep). Lee Gibbs was found guilty by the jury of Count

3

III (selling the mountain lion for $300), Count IV (illegal possession of the hide of the mountain lion); and, Count V (trafficking in body parts of unlawfully taken species, a felony).

The defendants were sentenced on January 15, 1990. Rebecca Gibbs was sentenced to a fine of $10,000 and a one year term of imprisonment, all of which was suspended on the condition that she have no firearms in her possession during the suspension and that she spend five days in the Fergus County Jail. Lee Gibbs was sentenced on Counts IV and V only, the District Court having declared that Count III constituted a lesser-included offense of Count V. As to Count IV, Lee Gibbs was fined $300 and ordered to serve 30 days in the Fergus County Jail concurrent with time imposed under Count V, and was further ordered to pay restitution in the sum of $500 pursuant to § 87-1-111(1)(b), MCA. As to Count V, the court imposed a fine of $10,000, which was suspended on the condition that the defendant Lee Gibbs obey all the fish and game laws of the state of Montana for the period of his incarceration and he was sentenced to a one year term of imprisonment at the Montana State Prison. All of each of the defendants' hunting, fishing and trapping privileges were suspended under § 87-1-111, MCA, from December 5, 1989 through and including December 31, 1999. The case has come to this Court on appeal from the foregoing judgments and sentences.

There is no doubt that there was sufficient evidence to sustain the convictions on counts found by the jury. The difficulty for us in the case arises, as it did for the District

4

Court, from consideration of the sentences imposed, in the light of the language of the statutes under which the defendants were charged. In passing sentence, the District Court expressed its dismay, saying:

> The statutes concerning the fish and game laws and regulations of Montana are mismatched, inconsistent, and provide inconsistent penalties. They render the hunting, fishing and trapping regulations of this state difficult if not impossible for game wardens to enforce, and make the job of other law enforcement officials difficult. I feel that the laws as they are written render it difficult for citizens of this state to know what those laws and regulations are. It is the feeling of this Court that they need to be redrafted so that they can be understood.
>
> This case does present some possible grounds for an appeal. The Supreme Court in this case, should the Defendant desire to appeal, may interpret the laws, but they will have difficulty in rendering an opinion which may have general application. I would request and invite them to do so, should they have the opportunity.

Montana law makes it a misdemeanor to sell, offer to sell, possess, ship or transport a fur-bearing game animal or any part thereof except as permitted by law. Section 87-3-111(1)(3), MCA. The law also provides that any person engaging in the activities prohibited by the misdemeanor statute in furtherance of a "scheme to traffic in the body parts" of unlawfully taken species is a felony. Section 87-3-111(4), MCA. The District Court properly concluded that the misdemeanor portion of the statute was a lesser-included offense of the felony portion, guided by State v. Hankins (1984), 209 Mont. 365, 680 P.2d 958. The District Court also held that under Hankins, the felony crime did not require a scheme to traffic by involving more than one animal. The District Court was

5

uncomfortable with this holding because there is no statutory definition for "trafficking" in game animals.

Because Lee Gibbs was convicted of a felony scheme to traffic in body parts, the District Court concluded that Count III was a lesser-included offense of that felony conviction and so imposed no sentence as to the sale of the mountain lion, charged as a misdemeanor.

With respect to the felony conviction of Count V, however, a problem arises as to the sentence imposed under the statute. Section 87-3-111(4), MCA, provides:

> Any person engaging in the activities prohibited in subsection (1) in furtherance of a scheme to traffic in the body parts of unlawfully taken species is guilty of a felony and shall be punished by a fine of $10,000 or imprisonment in the state prison for a term of 1 year or both.

The sentence for imprisonment in the foregoing statute does not meet the statutory definition of a "felony" found in § 45-2-101(21), MCA, which states:

> "Felony" means an offense in which the sentence imposed upon conviction is death or imprisonment in the state prison for any term <u>exceeding</u> 1 year. (Emphasis ours.)

On the other hand, a "misdemeanor" is defined as follows (§ 45-2-101(36), MCA):

> "Misdemeanor" means an offense in which the sentence imposed upon conviction is imprisonment in the county jail for any term or a fine, or both, or the sentence imposed is imprisonment in the state prison for any term of <u>one year or less</u>. (Emphasis supplied.)

Counsel for Lee Gibbs contends that because the jail punishment for the purported felony described in § 87-3-111(4), MCA, does not meet the definition of felony contained in § 45-2-101(21), MCA, the conviction of Lee Gibbs for a felony is improper. The state contends with respect to this argument that the legislature has the right to define crimes, and that moreover the general definitions of felony and misdemeanor under § 45-2-101 are intended to apply only to crimes described in Title 45, from language which appears in the first portion of § 45-2-101. We cannot accept the state's argument on this point however because of the language in § 45-1-201 which provides:

> Classification of offenses. (1) For the determination of the court's jurisdiction at the commencement of the action and for the determination of the commencement through the period of limitations, the offense shall be designated a felony or misdemeanor based upon the maximum potential sentence which could be imposed by statute.
>
> (2) An offense defined by any statute of this state other than this code shall be classified as provided in this section, and the sentence that may be imposed on conviction thereof shall be governed by this title and Title 46. (Emphasis added.)

Regardless therefore of the statement in § 87-3-111, MCA, that trafficking in game animals is a felony, because the jail sentence for a violation of that statute does not exceed one year, it may not, under the classification rules provided by the legislature, be considered a felony. Although the legislature has the undoubted right to classify crimes, in so doing the legislature is required to follow the rules which it has itself provided for such classification. We therefore determine that because of the

7

imprisonment provision of § 87-3-111(4), MCA, which fixes the imprisonment for a term of one year, and does not provide for a term exceeding one year, the conviction of Lee Gibbs for trafficking in game animals is in fact a misdemeanor. It is necessary therefore that the sentence imposed for the infraction of § 87-3-111(4), MCA, must be remanded to the District Court where a sentence shall be imposed by the District Court, as though the conviction were for a misdemeanor.

The District Court construed the violation of Count V to be a felony, and the violation of Count III a misdemeanor. It therefore held that Lee Gibbs was convicted in Count III of a lesser-included offense of Count V. We have now determined that a violation of Count V is a misdemeanor also. One misdemeanor cannot be a lesser-included offense of another misdemeanor. The District Court is not in error, however. The gravamen of his crime is that he sold a lion hide to Burke for $300. Selling an illegal game animal pelt is a misdemeanor under either §§ 87-3-111(1) or 87-3-111(4), MCA, since we decided in Hankins that trafficking can involve a single animal. Lee Gibbs cannot be convicted of more than one offense because one is included in the other. Section 46-11-502(1), MCA. We uphold the District Court in Gibb's conviction for a violation of § 87-3-111(4), MCA, and its decision not to convict for the same violation under § 87-3-111(1), MCA.

We turn now to the conviction of Lee Gibbs under Count IV. This Count related to the misdemeanor possession of an unlawfully taken fur-bearing animal, the bobcat pelt. Lee Gibbs contends that

8

he was lawfully in possession of the pelt of the bobcat, because it was taken by him in defense of the person of his son whom the bobcat was attacking. Section 87-3-130, MCA, provides that there is no criminal liability for the taking of wildlife otherwise protected by the game laws if the wildlife is molesting or threatening to kill any person. The same statute requires that any person who takes such wildlife in the protection of others notify the Department within 72 hours. Because no notification was given by Lee Gibbs to the Department, the District Court refused to allow the issue of Gibbs' defense of another person to be submitted to the jury. Gibbs having possessed the bobcat pelt for more than 72 hours, and with no excuse shown, not having reported acquiring the same to the Department, his possession of the pelt after that period became illegal. Thus the issue attempted to be raised by Lee Gibbs, that he shot the bobcat in defense of another person, would have no effect on the eventual outcome, since his possession after the 72 hour period was illegal, regardless of the circumstances under which he obtained the bobcat pelt. The District Court was not in error in refusing to submit to the jury the issue of Gibbs' defense of another person. His conviction for illegal possession of the pelt of a game animal is affirmed.

We next consider the appeal of Rebecca Gibbs. She was convicted of felony trafficking in parts of illegally-taken game animals on the basis of criminal accountability. She argues on appeal that the jury was hung on the counts charged against her husband, Lee Gibbs, relating to the bobcat pelts that Burke had

9

brought for tanning. She had admitted to Burke that it was she who did the tanning. There is no other evidence in the record which shows her participation in the acts charged against her husband, for which he was convicted. She relies on State v. Cornish (1925), 73 Mont. 205, 209, 235 P. 702, 703 and State ex rel. Murphy v. McKinnon (1976), 171 Mont. 120, 125, 556 P.2d 906, 909 that she cannot be criminally responsible as an accomplice because of her mere presence at the acts for which her husband was convicted.

Again the conviction of Rebecca was for "trafficking," as an accomplice. It is not necessary that criminal accountability must be founded on the convictions for the same crime by the principal offender. A person may be convicted for accountability on proof that the offense was committed, even though the other person claimed to have committed the offense has not been convicted, or is convicted of a different crime. Section 45-2-303, MCA.

There is stronger proof in Rebecca's case that she aided or abetted "trafficking," since for a consideration to her husband, she tanned two hides for Burke.

The same problem for Rebecca's felony conviction arises as for Lee Gibb's, relating to the classification of trafficking as a felony. What we said foregoing applies also here. Accordingly we sustain the conviction of Rebecca as a misdemeanor, and remand her sentence to the District Court for resentencing as a misdemeanor violation.

We strongly urge the Department of Fish, Wildlife and Parks to engage the legislature in a clean-up of the statutes defining

10

crimes against protected game animals. The present statutes, particularly the whole of § 87-3-111, MCA, are vague and redundant. Especially it should be made clear whether "trafficking" means a course of trade or the sale of a single animal. There are constitutional considerations to be recognized in the rights of people to know in clear language when their acts transgress the rules of society.

Convictions affirmed. Remanded for resentencing in accordance herewith.

_John C. Shelby_
Justice

We Concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_Diane G. Ba___

_R. C. McDonoug___
Justices

Justice William E. Hunt, Sr., concurs in this Opinion.